1  Michele Ballard Miller (SBN 104198)
     *mbmiller@cozen.com*
2  Bethany A. Vasquez (SBN 209423)
     *bavasquez@cozen.com*
3  Di Addy Tang (SBN 314891)
     *dtang@cozen.com*
4  COZEN O'CONNOR
5  101 Montgomery Street, Suite 1400
    San Francisco, CA 94104
6  Telephone: (415) 644-0914
    Facsimile: (415) 644-0978

7  Attorneys for Defendants
8  SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP,
    JACKIE GONZALES AND ARI LEVY

9

10                UNITED STATES DISTRICT COURT

11               CENTRAL DISTRICT OF CALIFORNIA

12

13  ROSALYN WARREN,                    Case No.: 2:21-cv-00940-PA-AGR

14          Plaintiff,                 **DEFENDANTS SOUTHERN
                                        CALIFORNIA PERMANENTE
15  v.                                  MEDICAL GROUP,
                                        JACQUELINE GONZALES AND
16  SOUTHERN CALIFORNIA                 ARI LEVY'S MEMORANDUM
    PERMANENTE MEDICAL GROUP,           OF POINTS AND AUTHORITIES
17  KAISER PERMANENTE, JACKIE           IN SUPPORT OF THEIR
    GONZALEZ, ARI LEVY, and DOES 1      MOTION FOR SUMMARY
18  through 10, inclusive,              JUDGMENT OR, IN THE
                                        ALTERNATIVE, PARTIAL
19          Defendants.                 SUMMARY JUDGMENT**

20                                      **Date:     April 11, 2022**
                                        **Time:     1:30 p.m.**
21                                      **Dept.:    Courtroom 9A, 9th Floor**
                                        **Judge:    Hon. Percy Anderson**
22
                                        Complaint:  February 1, 2021
23                                      Trial Date:  May 17, 2022

24

25

26

27                                    **1**
    **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
28  OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM
    OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
    Case No: 2:21-cv-00940-PA-AGR**

COZEN O'CONNOR
101 MONTGOMERY ST, SUITE 1400
SAN FRANCISCO, CA 94104

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................ 8

II.    STATEMENT OF FACTS ........................................................... 9

       A.    SCPMG Has A Demonstrated Commitment To A Workplace Free Of Discrimination, Harassment, And Retaliation. ..................... 9

       B.    Plaintiff's Employment With TPMG .................................. 9

       C.    Plaintiff Began Exhibiting Performance Issues During Orientation. . 10

       D.    SCPMG Provided Plaintiff With A 30-Day Performance Evaluation. 12

       E.    Plaintiff Continued to Exhibit Performance Issues After The 30-Day Performance Evaluation. ...................................... 13

       F.    SCPMG Provided Plaintiff With A 60-Day Performance Evaluation And Terminated Her Employment For Performance Issues Within The 90-Day Probationary Period. ...................................... 16

III.   LEGAL ARGUMENT ................................................................ 17

       A.    Summary Judgment Should Be Granted As To Plaintiff's First, Second, Sixth and Seventh Claims For Race, Age And Disability Discrimination Under The Civil Rights Act of 1981 And FEHA. ..... 17

             1.    Plaintiff cannot establish a *prima facie* case of race, age or disability discrimination. ........................................ 18

             2.    SCPMG terminated Plaintiff's employment for legitimate non-discriminatory reasons and there is no evidence of pretext ...... 20

       B.    Plaintiff's Third Claim For Failure To Prevent Discrimination Fails As A Matter Of Law. .................................................. 25

       C.    Plaintiff's Fourth And Eighth Claims For Retaliation Fail As A Matter Of Law. .................................................... 26

       D.    Plaintiff's Fifth Claim For Harassment Fails As A Matter Of Law. .. 27

       E.    Plaintiff's Ninth Claim For Intentional Infliction Of Emotional Distress ("IIED") Fails As A Matter of Law .................................. 30

       F.    Plaintiff's Tenth Claim For Wrongful Termination Fails ............... 31

       G.    SCPMG Is Entitled To Summary Adjudication Of Plaintiff's Claim For Punitive Damages. ................................................ 31

Cozen O'Connor
101 Montgomery St, Suite 1400
San Francisco, CA 94104

**2**

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
**Case No: 2:21-cv-00940-PA-AGR**

IV.    CONCLUSION .................................................................................... 32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COZEN O'CONNOR
101 MONTGOMERY ST., SUITE 1400
SAN FRANCISCO, CA 94104

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 2:21-cv-00940-PA-AGR**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Airlines, Inc. v. Sheppard, Mullin, Richer & Hampton*,
  96 Cal.App.4th 1017 (2002) ........................................................................ 32

*Barrett v. Applied Radian Energy Corp.*,
  240 F.3d 262 (4th Cir. 2001) ...................................................................... 26

*Bradley v. Harcourt, Brace & Co.*,
  104 F.3d 267 (9th Cir. 1996) ...................................................................... 22

*Cole v. Fair Oaks Fire Protection Dist.*,
  43 Cal.3d 148 (1987) .................................................................................. 30

*Fonseca v. Sysco Food Services of Arizona, Inc.*,
  374 F.3d 840 (9th Cir. 2004) ...................................................................... 18

*Guthrey v. State of Cal.*,
  63 Cal.App.4th 1108 (1998) ....................................................................... 29

*Guz v. Bechtel Nat'l, Inc.*,
  24 Cal.4th 317 (2000) ........................................................................... 18, 20

*Hanson v. Lucky Stores, Inc.*,
  74 Cal. App. 4th 215 (1999) ....................................................................... 31

*Hardin v. S.C. Johnson & Sons, Inc.*,
  167 F.3d 340 (7th Cir. 1999) ...................................................................... 29

*Hersant v. Dep't of Social Servs.*,
  57 Cal.App.4th 997 (1997) ......................................................................... 21

*Hope v. Cal. Youth Authority*
  134 Cal.App.4th 577 (2005) ....................................................................... 28

*Horn v. Cushman & Wakefield W., Inc.*,
  72 Cal.App.4th 798 (1999) .................................................................... 21, 25

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 2:21-cv-00940-PA-AGR**

COZEN O'CONNOR
101 MONTGOMERY ST., SUITE 1400
SAN FRANCISCO, CA 94104

*Houston v. Regents of the Univ. of Cal.,*
    2006 WL 1141238 (N.D. Cal. May 1, 2006) ....................................................29

*Hughes v. Pair,*
    46 Cal.4th 1035 (2009) .......................................................................................31

*Janken v. GM Hughes Electronics,*
    46 Cal.App.4th 55 (1996) ...................................................................................28

*Jones v. Dept. of Corrections & Rehabilitation,*
    152 Cal.App.4th 1367 (2007) .............................................................................30

*King v. UPS, Inc.,*
    152 Cal.App.4th 426 (2007) ........................................................................20, 25

*Knights v. Hewlett Packard,*
    230 Cal.App.3d 775 (1991) ................................................................................20

*Lyons v. England,*
    307 F.3d 1092 (9th Cir. 2002) ............................................................................18

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 *(1973)* ............................................................................................17

*Metoyer v. Chassman,*
    504 F.3d 919, 930-31 (9th Cir. 2007) .................................................................17

*Miller v. Dept. of Corrections*
    36 Cal.4th 446 (2005) .........................................................................................28

*Moore v. May Dept. Stores Co.,*
    222 Cal. App. 3d 836 (1990) ..............................................................................21

*Moore v. Regents of University of California,*
    248 Cal.App.4th 216 (2016) ...............................................................................27

*Nasser v. AT&T Corp.,*
    2007 WL 1119203 (N.D. Cal. April 16, 2007) ...................................................26

COZEN O'CONNOR
101 MONTGOMERY ST., SUITE 1400
SAN FRANCISCO, CA 94104

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 2:21-cv-00940-PA-AGR**

*Nat'l Ass'n of African Am.-Owned Media v. Charter Commc'ns, Inc.*,
    915 F.3d 617 (9th Cir. 2019) .................................................................. 17

*Nelson v. Geithner*,
    408 Fed.Appx. 49 (9th Cir. 2011) ......................................................... 20

*Pardi v. Kaiser Foundation Hosps.*,
    389 F3d 840 (9th Cir. 2004) .................................................................. 26

*Schuler v. Chronicle Broadcasting Co., Inc.*,
    793 F.2d 1010 (9th Cir. 1986) ............................................................... 22

*Scott v. Phoenix Schools, Inc.*,
    175 Cal.App.4th 702 (2009) .................................................................. 32

*Shoemaker v. Myers*,
    52 Cal.3d 1 (1990) ................................................................................ 31

*Thompson v. City of Monrovia*,
    186 Cal.App.4th 860 (2010) ........................................................... 25, 27

*Trujillo v. N. County Transit Dist.*,
    63 Cal.App.4th 280 (1998) .................................................................... 25

*Villiarimo v. Aloha Island Air, Inc.*,
    281 F.3d 1054 (9th Cir. 2002) ............................................................... 21

*Walker v. Blue Cross of Cal.*,
    4 Cal.App.4th 985 (1992) ...................................................................... 21

*White v. Ultramar Inc.*,
    21 Cal.4th 563 (1999) ........................................................................... 31

*Yanowitz v. L'Oreal USA, Inc.*,
    36 Cal.4th 1028 (2005) ...................................................... 18, 24, 26, 27

**Statutes**

California Code of Civil Procedure § 3294 ..................................... 31, 32

COZEN O'CONNOR
101 MONTGOMERY ST, SUITE 1400
SAN FRANCISCO, CA 94104

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 2:21-cv-00940-PA-AGR**

1

California Gov't Code, § 12940 (j)(1)......................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COZEN O'CONNOR
101 MONTGOMERY ST, SUITE 1400
SAN FRANCISCO, CA 94104

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 2:21-cv-00940-PA-AGR**

# I.    INTRODUCTION

Incapable of accepting that her own conduct led to the termination of her employment, Plaintiff Rosalyn Warren ("Plaintiff), a former Psychiatric Social Worker for Southern California Permanente Medical Group ("SCPMG"), brings this action alleging that Defendants SCPMG, Ari Levy, and Jacqueline Gonzales (collectively, "Defendants") subjected her to unlawful discrimination on the basis of her race, age, and disability, retaliated against her, harassed her, failed to prevent discrimination, inflicted intentional emotional distress on her and wrongfully terminated her employment.  Her claims are made of whole cloth.

Plaintiff worked for SCPMG as a Psychiatric Social Worker in the Behavioral Health Department at Lancaster Mental Health.  SCPMG terminated Plaintiff's within 90 days of her employment beginning, because despite multiple opportunities for improvement, Plaintiff's performance deficiencies persisted.  Plaintiff's performance deficiencies included "difficulty with workflows, issues with finishing charts on time, time management problems, late for appointments with patients and with staff, and difficulty with problem solving work related questions and issues."

Now Plaintiff argues her negative performance evaluations and SCPMG's dissatisfaction with her work were motivated because of her race, age, alleged disability, and because she allegedly engaged in "protected activity."  However, there is simply no evidence of any discriminatory or retaliatory motive, and Plaintiff cannot substitute her judgment as to the significance of her performance issues for that of her supervisors.  Plaintiff has nothing to support that her termination (or anything else) was based on any protected characteristic or protected activity other than her own assertions and speculations.  Plaintiff's subjective and conclusory opinion alone is insufficient to defeat this Motion and all of Plaintiff's claims fail as a matter of law.

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
**Case No: 2:21-cv-00940-PA-AGR**

COZEN O'CONNOR
101 MONTGOMERY ST, SUITE 1400
SAN FRANCISCO, CA 94104

## II.    STATEMENT OF FACTS

### A.    SCPMG Has A Demonstrated Commitment To A Workplace Free Of Discrimination, Harassment, And Retaliation.

Throughout Plaintiff's employment, SCPMG maintained comprehensive employment policies prohibiting any form of unlawful discrimination, harassment or retaliation.[1]    These policies not only expressly prohibit harassment and discrimination, but also affirm SCPMG's commitment to providing a work environment free from retaliation. (*Id.*).

### B.    Plaintiff's Employment With TPMG

Plaintiff worked briefly for SCPMG[2] as a Psychiatric Social Worker in the Behavioral Health Department of Lancaster Mental Health from April 6, 2020, until her termination on July 24, 2020. (Deposition Transcript of Rosalyn Warren ("Warren Tr."), Declaration of Bethany Vasquez ("Vasquez Decl."), Ex. A, 62:6-8, 63:14-16, 64:3-6, 64:24-65:3, 153:14-17.)    Plaintiff interviewed for the position in-person with the Director of the department, Defendant Dr. Ari Levy Ph.D. ("Levy"), and Clinical Program Manager, Defendant Jacqueline Gonzales ("Gonzales").[3] (Warren Tr., Vasquez Decl., Ex. A, 57:8-58:17; Declaration of Levy ("Levy Decl.") ¶ 2; Declaration of Gonzales ("Gonzales Decl."). ¶ 2.)    During the interview, Plaintiff did

---

[1] *See* Equal Employment Opportunity and Affirmative Action Policy (Declaration of Leonardo Garcia ("Garcia Decl.") ¶ 2); Non-Retaliation Policy (Garcia Decl. ¶ 3); Commitment to a Harassment Free Work Environment (Garcia Decl. ¶ 4); Equal Employment Opportunity Internal Complaint Procedure (Garcia Decl. ¶ 5); and Principles of Responsibility (Garcia Decl. ¶ 6.)

[2] Throughout Plaintiff's deposition, Plaintiff used the term "Kaiser" interchangeably with "SCPMG" to refer to her employer Defendant SCPMG. (Warren Tr., Vasquez Decl., Ex. A, 15:10-16.)

[3] Plaintiff reported directly to Gonzales, who reported to Levy.    Both Levy and Gonzales supervised Plaintiff's work. (Warren Tr., Vasquez Decl., Ex. A, 34:21-24; Gonzales Decl. ¶ 4.)

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF Case No: 2:21-cv-00940-PA-AGR**

COZEN O'CONNOR
101 MONTGOMERY ST, SUITE 1400
SAN FRANCISCO, CA 94104

not disclose to Levy and Gonzales, nor were there any questions asked related to, her age, her medical conditions or that she had an upcoming surgery. (Warren Tr., Vasquez Decl., Ex. A, 60:2-10; Levy Decl. ¶ 2; Gonzales Decl. ¶ 2.)  SCPMG offered Plaintiff the position the day after her interview, and Plaintiff accepted the position immediately. (Warren Tr., Vasquez Decl., Ex. A, 60:11-20; Levy Decl. ¶ 2.)  Plaintiff acknowledges her position was a full-time, union position, and that she was subject to a 90-day probationary period pursuant to the collective bargaining agreement ("CBA") between her union, the National Union of Healthcare Workers ("NUHW"), and SCPMG. (Warren Tr., Vasquez Decl., Ex. A, 62:6-8, 62:13-15, 62:18-21; Gonzales Decl. ¶ 3.)

**C.    Plaintiff Began Exhibiting Performance Issues During Orientation.**

When Plaintiff started work on April 6, 2020, she commenced a two-week orientation which included shadowing several other therapists and clerical staff. (Gonzales Decl. ¶ 5.)[4]  As part of the orientation, Plaintiff was slated to attend a

---

[4] Plaintiff claims that during this time period, she was the only person required to physically go into work while others were allowed to work remotely. (Warren Tr., Vasquez Decl., Ex. A, 66:7-67:17.) This is simply not true.  Gonzales and Martinez went into the office because as managers, they were required to be onsite, and other therapists, including Hans Borough, Marisol Tejeda-Alvarado, and Gabriela Acosta, physically reported to work during this time.  (Warren Tr., Vasquez Decl., Ex. A, 65:14-19; Gonzales Decl. ¶ 6; Martinez Decl. ¶ 2.)  As a new employee, Plaintiff needed to be physically present at work so that she could attend orientation and be properly trained. (Warren Tr., Vasquez Decl., Ex. A, 67:18-23; Levy Decl. ¶ 3.) Furthermore, Plaintiff admits that she never asked or emailed her managers or anyone else about the possibility of working remotely. (Warren Tr., Vasquez Decl., Ex. A, 66:7-67:17, 69:13-15; Levy Decl. ¶ 3; Gonzales Decl. ¶ 6.) Plaintiff also claims that she asked Levy whether she could park in the handicapped spaces in the front of the building, but that she was told to park in the handicapped spaces toward the back of the building. (Warren Tr., Vasquez Decl., Ex. A, 35:3-39:12.)  While immaterial, Levy disputes this and claims Plaintiff only asked if she could park in the spaces in front of the building without specifically referencing the handicapped spots.  Levy

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF Case No: 2:21-cv-00940-PA-AGR**

COZEN O'CONNOR
101 MONTGOMERY ST, SUITE 1400
SAN FRANCISCO, CA 94104

COZEN O'CONNOR
101 MONTGOMERY ST., SUITE 1400
SAN FRANCISCO, CA 94104

training session with Project Manager, Robert Hermus ("Hermus"), who would instruct Plaintiff on the Health Connect program, a system used by Kaiser employees to input notes regarding patient encounters. (Warren Tr., Vasquez Decl., Ex. A, 68:21-69:3, 89:17-21; 91:4-13; Declaration of Hermus ("Hermus Decl.") ¶ 2.)  Kaiser refers to this process as "charting on the patients." (Hermus Decl. ¶ 2.)  During the training, Hermus noticed that Plaintiff had substantial trouble following along and exhibited considerable difficulty locating certain functions and processes within the charting system that had been explained in training. (Hermus Decl. ¶ 3.)  On April 20, 2020, Cindy "CJ" Martinez ("Martinez"), Administrative Services Manager for the Behavioral Health Department, emailed Hermus to request that Plaintiff be scheduled for a second day of Health Connect training because Hermus had reached out to both Martinez and Gonzales expressing concerns that Plaintiff did not fully grasp the essential concepts of Health Connect.  (Martinez Decl. ¶ 3, Ex. A; Gonzalez Decl. ¶ 7, Ex. A; Hermus Decl. ¶ 4.)  Hermus responded to Martinez's email on the same day, agreeing that Plaintiff needed additional training on the system and expressing concerns that Plaintiff seemed to be easily confused with simple functions in the charting system and would often lose her place when working within Health Connect. (Hermus Decl. ¶ 4.)  After a second day of training, Hermus felt that Plaintiff had improved her ability to interface with the program, but still lacked full control of all the functions and processes. (Hermus Decl. ¶ 5.)  There were no further interactions between Hermus and Plaintiff after the second training session. (Warren Tr., Vasquez Decl., Ex. A, 97:23-25; Hermus Decl. ¶ 5.)[5]

---

told her the spaces in the front were reserved for patients.  Levy never told Plaintiff she could not use the handicapped spaces in the front or elsewhere. (Levy Decl. 3.)
[5] While not alleged in her complaint, during deposition, Plaintiff testified that Hermus sent an email to Gonzales stating that Plaintiff "did not have the ability to learn." (Warren Tr., Vasquez Decl., Ex. A, 91:19-92:10.)  This is not true.  Hermus never

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 2:21-cv-00940-PA-AGR**

COZEN O'CONNOR
101 MONTGOMERY ST, SUITE 1400
SAN FRANCISCO, CA 94104

**D.    SCPMG Provided Plaintiff With A 30-Day Performance Evaluation.**

As soon as Plaintiff started her employment, Gonzales had concerns about Plaintiff's ability to follow directions and retain information during orientation. Gonzales notified Levy of her concerns about Plaintiff's performance issues, and on April 25, 2020, Levy emailed Gonzalez, asking her to complete a 30-day Performance Evaluation for Plaintiff so they could give Plaintiff timely feedback and provide her the opportunity to correct her deficiencies. (Gonzales Decl. ¶ 8, Ex. B; Levy Decl. ¶ 4, Ex. A.)   Gonzales and Levy presented Plaintiff with a Performance Evaluation covering her performance during the time period from April 6, 2020 to May 6, 2020. (Gonzales Decl. ¶ 9.)    The evaluation contained, among others, the following comments regarding Plaintiff's performance:

- Plaintiff did not communicate in a timely manner with two staff members about cancelling training sessions.
- Plaintiff was accidentally declining meeting invitations even though she was trained on accepting invitations.
- With respect to completing patient assessments, Plaintiff had missed questions or her responses had been limited despite the fact that she was given sufficient time to complete the assessments.

---

sent any email to Gonzales stating that Plaintiff did not have the ability to learn. (Hermus Decl. ¶ 4.)  Plaintiff also testified that during her trainings, Hermus  made comments to her such as: "Old people like us have to really . . . work harder.  You are the only person I've had to train twice, but we are old" and "Give a sister a break. Give a brother a break," in which he said "sista" instead of "sister" and "brutha" instead of "brother." (Warren Tr., Vasquez Decl., Ex. A, 92:1-93:7, 96:19-97:22.) Hermus denies he made any comments to Plaintiff regarding age or that she was the only person he had to train twice. (Hermus Decl. ¶ 6.)  If Hermus did make a comment about "sisters and brothers," it was in the context that they were all part of the Kaiser family and that everyone took care of each other like "sisters and brothers." (Hermus Decl. ¶ 6.)  Moreover, Hermus did not say "sista" instead of "sister" or "brutha" instead of "brother," and if it sounded that way to Plaintiff, it is most likely because Hermus is from Brooklyn, New York and speaks with a New York accent. (Hermus Decl. ¶ 6.)

**12**

- Plaintiff missed the Virtual Group training and requested to reschedule.
- Plaintiff demonstrated some difficulty with problem solving, such as who to approach when schedules were unclear, how to prioritize, and how to balance time management. This area was one in need of additional focused improvement.

(Gonzales Decl. ¶ 9, Ex. C; Warren Tr., Vasquez Decl., Ex. A, 118:15-126:9, Ex. 10.) Gonzales gave Plaintiff an overall assessment falling below "fully effective." (Gonzales Decl. ¶ 9, Ex. C.) Plaintiff acknowledged the Performance Evaluation by signing it on May 13, 2020. (Gonzales Decl. ¶ 9, Ex. C.)

**E.      Plaintiff Continued to Exhibit Performance Issues After The 30-Day Performance Evaluation.**

On May 7, 2020, Levy emailed Plaintiff about her patient charts that had been left open for more than fourteen days. (Levy Decl. ¶ 5, Ex. B.) Levy advised Plaintiff that this was not acceptable and she needed to complete the charts and sign the encounter to close them. (Levy Decl. ¶ 5.) Shortly thereafter, Gonzalez informed Levy that Plaintiff was not completing her charts in a timely manner, which prompted Levy to review Plaintiff's charts. On May 19, 2020, Levy spoke with Plaintiff on the phone about her delay in completing charts. (Levy Decl. ¶ 6.) After their phone call, Plaintiff sent Levy an email explaining why she had not completed her charting, stating the following:

> Just wanted to clarify that I didn't neglect charting. If you look at my 11:30 appointment it is scheduled for 60 minutes which would take me into 11:30-12:30 and gave me .5 time to go to the restroom and come back to chart on what I could so that I can be at the staff meeting today at 1:00pm. At 2:00pm I have lunch and then at 2:30 pm I had another client. Hope this clarifies for you why I'm not done charting on my cases when we spoke at 3:30pm today. However, they will all be fully charted before I leave for home today.

(Levy Decl. ¶ 6, Ex. C.) It was apparent to Levy that Plaintiff was staying at work

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 2:21-cv-00940-PA-AGR**

COZEN O'CONNOR
101 MONTGOMERY ST, SUITE 1400
SAN FRANCISCO, CA 94104

late so that she could complete her charts.[6] (Levy Decl. ¶ 6.)  Levy responded to Plaintiff on the same day, informing her that the schedule and number of appointments she described in her email was the same for other therapists, except *their* schedules had even *more* patients booked, and most of them were still able to complete their work within the same day and go home on time. (Levy Decl. ¶ 6, Ex. C.)

On May 26, 2020, Plaintiff began a medical leave of absence through July 7, 2020, at which time she returned to work without restrictions on July 8, 2020. (Gonzales Decl. ¶ 10.)[7]  Plaintiff admits that after she returned to work from medical leave, no one made any negative comment about her needing to take medical leave. (Warren Tr., Vasquez Decl., Ex. A, 136:13-19).

As soon as she returned to work, Plaintiff continued to exhibit performance issues.  Plaintiff was late for work on her first day back on July 8, 2020.  She was scheduled to start work at 12:00pm, but she called Gonzales at about 11:58am to let Gonzales know that she was going to get some coffee first. (Gonzales Decl. ¶ 11.) Even though Gonzales informed Plaintiff that she had a patient scheduled at 12:00pm, she still came to the office about five minutes late. (Gonzales Decl. ¶ 11.)  When Plaintiff tried to log into her computer, she could not remember her login information and had to call the IT department to reset her passwords.  Plaintiff was 20-30 minutes late to her patient appointment. (Gonzales Decl. ¶ 11.)

During Plaintiff's leave and following her return, Gonzales continued to notice performance concerns.  Specifically, while Plaintiff was on leave, Gonzales

---

[6] Levy also knew that Plaintiff stayed late because she would call him on his cell phone late at night and ask him work-related questions. (Levy Decl. ¶ 6.)

[7] Plaintiff did not notify her managers about needing time off for surgery until her orientation. (Gonzales Decl. ¶ 10; Warren Tr., Vasquez Decl., Ex. A, 69:16-70:19.) Plaintiff admits that Gonzales never told her that there was a problem with her taking time off for surgery. (Warren Tr., Vasquez Decl., Ex. A, 72:2-5, 73:4-7.)

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
**Case No: 2:21-cv-00940-PA-AGR**

COZEN O'CONNOR
101 MONTGOMERY ST, SUITE 1400
SAN FRANCISCO, CA 94104

discovered that Plaintiff left the majority of her encounter notes open before she went on leave, and only closed five or six notes. (Warren Tr., Vasquez Decl., Ex. A, 83:9-18, 105:25-106:6; Gonzales Decl. ¶ 13.)  Plaintiff did this despite instruction during training that once she completed a psych note, she had 48 hours to close and sign the encounter. (Gonzales Decl. ¶ 13.)  As a result, providers from other departments were unable to close out of patient encounters causing disruptions in the continuity of patient care because no one else can close the psych note except for the person who initiated it.[8] (Gonzales Decl. ¶ 12, Ex. D.)

Martinez, who managed and oversaw the clerical staff for the clinic, also noticed deficiencies in Plaintiff's work performance.  For example, Martinez received complaints from staff members that Plaintiff continued to have difficulties sending messages to the clerical staff via Health Connect. (Martinez Decl. ¶ 4.)  Martinez arranged on several occasions for a staff member to sit with Plaintiff to go through the process of sending messages using Health Connect. (Martinez Decl. ¶ 4.)  Despite the additional coaching, Martinez observed that Plaintiff continued to struggle with the system. (Martinez Decl. ¶ 4.)  In addition, on July 9, 2020, Plaintiff told Martinez

---

[8] Plaintiff now tries to claim that she did not close her notes because Gonzales purportedly told her to leave the notes open so that Gonzales could review them, and that Gonzales did not provide Plaintiff a time frame as to how long this practice would continue.[8] (Warren Tr., Vasquez Decl., Ex. A, 78:2-80:4.)  Shortly after Plaintiff began seeing patients, however, Gonzales, began noticing that Plaintiff had not documented any patient encounters in Health Connect even though she had already seen the patients. (Gonzales Decl. ¶ 13.)  This prompted Gonzales to review Plaintiff's notes to ensure that they were completed and done correctly. (Gonzales Decl. ¶ 13.)  Gonzales informed Plaintiff that she would review Plaintiff's notes, but she never told Plaintiff to keep her notes open.  Even if the notes were closed, they could still be edited by creating an addendum. (Gonzales Decl. ¶ 13.)  Plaintiff admits that she only followed up with Gonzales once about whether she could close the notes, and she did not further investigate whether or how long her notes stayed open. (Warren Tr., Vasquez Decl., Ex. A, 81:11-22.)

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
**Case No: 2:21-cv-00940-PA-AGR**

COZEN O'CONNOR
101 MONTGOMERY ST, SUITE 1400
SAN FRANCISCO, CA 94104

around 2:20 p.m. that she was going to CVS and would be back for an upcoming appointment; however, Martinez noticed on Health Connect that Plaintiff had a patient intake scheduled at 2:30 pm. (Martinez Decl. ¶ 5, Ex. B; Warren Tr., Vasquez Decl., Ex. A, 104:2-105:3.)  Plaintiff returned to the clinic at approximately 2:47pm and was late to her patient appointment. (Martinez Decl. ¶ 5.)  On July 10, 2020, Martinez noticed that Plaintiff came into the office at 8:42 a.m., despite the fact that she had a patient scheduled for 8:30 a.m. – Plaintiff called the patient at 8:50 a.m. (Martinez Decl. ¶ 6, Ex. C.)

**F.     SCPMG Provided Plaintiff With A 60-Day Performance Evaluation And Terminated Her Employment For Performance Issues Within The 90-Day Probationary Period.**

Both Gonzales and Martinez informed Levy about their ongoing concerns regarding Plaintiff's work performance. (Levy Decl. ¶ 7.)  Specifically, Gonzales and Martinez told Levy that Plaintiff had shown up late on several occasions to patient appointments (Levy Decl. ¶ 7.)  Levy also observed – by reviewing her charting – that Plaintiff was not following up on calls to patients to complete phone assessments and was continuing to fall several hours behind in completing patient charts. (Levy Decl. ¶ 7.)  Based on the feedback provided by Gonzales and Martinez and his own observations of Plaintiff's job performance, Levy reached out to Human Resources Consultant, Leonardo Garcia ("Garcia") via email on July 14, 2020 to inquire about terminating Plaintiff who was still in her 90-day probationary period.  (Garcia Decl. ¶ 8; Levy Decl. ¶ 8, Ex. D.)  Levy reflected in his email to Garcia that he had informed the union steward about his intent to terminate Plaintiff, and the union steward did not contest the action. (Levy Decl. ¶ 8.)  Garcia advised Levy that he should prepare a written termination notice outlining the reasons for the termination and prepare a performance evaluation. (Garcia Decl. ¶ 8; Levy Decl. ¶ 8.)

On July 23, 2020, Levy, Gonzales, and Plaintiff's union representative,

COZEN O'CONNOR
101 MONTGOMERY ST. SUITE 1400
SAN FRANCISCO, CA 94104

**16**

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
**Case No: 2:21-cv-00940-PA-AGR**

Gabriela Acosta, met with Plaintiff to present her with the termination notice and 60-day Performance Evaluation. (Levy Decl. ¶ 9.)  The termination notice listed the reasons for Plaintiff's termination, which included "difficulty with workflows, issues with finishing charts on time, time management problems, late for appointments with patients and with staff, and difficulty with problem solving work related questions and issues." (Levy Decl. ¶ 9, Ex. E.)  The 60-day Performance Evaluation reflected that Plaintiff had not shown any improvement on many of the issues raised in her previous performance evaluation, and again, Plaintiff's overall assessment was graded as below "fully effective." (Levy Decl. ¶10, Ex. F, Warren Tr. , Vasquez Decl., Ex. A, 140:7-23, Ex. 15.)  Plaintiff's employment terminated on July 24, 2020 while she was still in her 90-day probationary period. (Levy Decl. ¶ 11.)  For probationary employees, there is no corrective action process or appeal process for the termination decision under the CBA. (Garcia Decl. ¶ 9.)

### III.    LEGAL ARGUMENT

**A.    Summary Judgment Should Be Granted As To Plaintiff's First, Second, Sixth and Seventh Claims For Race, Age And Disability Discrimination Under The Civil Rights Act of 1981 And FEHA.**

The elements of a *prima facie* case are essentially the same under both the Civil Rights Act of 1981 and FEHA.[9] To state a *prima facie* case of race discrimination under both the Civil Rights Act of 1981 and FEHA, Plaintiff must show that: (1) she was a member of a protected class; (2) she was qualified for the position or was

---

[9] When analyzing race discrimination claims under the Civil Rights Act of 1981 (42 U.S.C. § 1981), courts follow the same legal principles as those applicable in a Title VII disparate treatment case and apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Metoyer v. Chassman*, 504 F.3d 919, 930-31 (9th Cir. 2007)(abrogated on other grounds by *Nat'l Ass'n of African Am.-Owned Media v. Charter Commc'ns, Inc*., 915 F.3d 617 (9th Cir. 2019)).  California courts also apply the Title VII framework to claims brought under FEHA. *Id*. at 941.

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
**Case No: 2:21-cv-00940-PA-AGR**

COZEN O'CONNOR
101 MONTGOMERY ST, SUITE 1400
SAN FRANCISCO, CA 94104

performing competently; (3) she suffered an adverse employment action; and (4) there were other circumstances surrounding the adverse employment action that suggests discriminatory motive. *See Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 850 (9th Cir. 2004); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 355 (2000).  If Plaintiff is able to establish a *prima facie* case, the burden then shifts to Defendants to set forth a legitimate, non-discriminatory reason for the adverse employment action, for which Plaintiff must then set forth evidence of pretext; failure to do so warrants summary judgment in favor of Defendants.  *See Lyons v. England,* 307 F.3d 1092, 1112 (9th Cir. 2002); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1042 (2005).  This burden-shifting framework applies to all of Plaintiff's discrimination claims – race, age, and disability.

Here, Plaintiff's claims for unlawful discrimination -- whether based on the termination of her employment or the myriad other things she categorizes as "discrimination" -- fail for two independent reasons: (1) Plaintiff cannot establish a *prima facie* case; and (2) SCPMG terminated her for legitimate, non-discriminatory reasons and she has no evidence of pretext.

### 1. Plaintiff cannot establish a *prima facie* case of race, age or disability discrimination.

Plaintiff cannot establish a *prima facie* case for two distinct reasons: (1) based on her poor performance, she cannot demonstrate she was performing competently in her job; and (2) there is no evidence whatsoever to suggest that SCPMG's conduct was motivated by Plaintiff's race (African-American), age (over the age of 40) or disability (hip surgery and COVID-19).

First, Plaintiff's performance issues demonstrate that she was not performing competently in her position.  Indeed, Plaintiff started as a new employee on April 6, 2020 and was still in her 90-day probationary period when her managers, Levy and

COZEN O'CONNOR
101 MONTGOMERY ST., SUITE 1400
SAN FRANCISCO, CA 94104

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 2:21-cv-00940-PA-AGR**

Gonzales, noticed and received concerns that Plaintiff struggled with learning how to use the Health Connect system, that Plaintiff missed an orientation meeting, that Plaintiff had difficulties following directions and retaining information during orientation, and that when Plaintiff started seeing patients, she would be late to appointments and would be several hours behind in completing patient charts. On May 6, 2020, Gonzales conducted a 30-day performance evaluation of Plaintiff in which Plaintiff's overall assessment was graded as below "fully effective." After Plaintiff returned to work from medical leave on July 9, 2020, she continued to exhibit performance issues, such as leaving psych notes open so that other providers were unable to close out of patient encounter forms, falling behind and inability to complete patient charts in a timely manner, and failing to follow up with patients to complete phone assessments. On July 23, 2020, Plaintiff was given a 60-day performance evaluation in which she was again graded as below "fully effective." As a result, Plaintiff was terminated on July 24, 2020 for exhibiting numerous performance issues, which were "difficulty with workflows, issues with finishing charts on time, time management problems, late for appointments with patients and with staff, and difficulty with problem solving work related questions and issues."

Plaintiff admits she had difficulty learning the Health Connect system, that she missed an orientation meeting, and that she was late to a patient appointment because she had gone to CVS. (Warren Tr., Vasquez Decl., Ex. A, 95:9-21, 104:2-105:3, 112:10-113:7.) Plaintiff also admits that she failed to close multiple psych notes before going on medical leave. (Warren Tr., Vasquez Decl., Ex. A, 83:9-18, 105:25-106:6.) Thus, Plaintiff's own admissions demonstrate that she was not performing competently in her position.

Second, as further discussed below as to why Plaintiff cannot establish pretext, Plaintiff has no evidence to suggest that SCPMG's stated reasons for termination were

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
**Case No: 2:21-cv-00940-PA-AGR**

COZEN O'CONNOR
101 MONTGOMERY ST., SUITE 1400
SAN FRANCISCO, CA 94104

because of her protected characteristics. (*See infra* § III.A.2.) Plaintiff admits that she never heard any inappropriate comments from her managers about her race, age or disability, nor could she point to any specific language in her performance evaluations that are discriminatory based on her race, age or disability. (Warren Tr., Vasquez Decl., Ex. A, 11:18-13:20, 50:20-51:4, 51:9-18, 73:11-15, 160:3-163:14.)

### 2. SCPMG terminated Plaintiff's employment for legitimate non-discriminatory reasons and there is no evidence of pretext.

Even if Plaintiff could establish a *prima facie* case of discrimination (which she cannot), her race, age and disability discrimination claims still fail because SCPMG had legitimate, non-discriminatory reasons for terminating Plaintiff's employment. Namely, it believed that Plaintiff's poor performance and her failure to improve, despite repeated opportunities to do so, rendered her unqualified in performing her job. (*See supra* § III.A.1.) There is ample case law supporting the premise that poor performance constitutes a legitimate, non-discriminatory reason for termination. *See Nelson v. Geithner*, 408 Fed. Appx. 49, 50 (9th Cir. 2011) (finding plaintiff "failed to raise a triable issue that the [employer's] proffered nondiscriminatory reasons for its adverse employment actions, such as his poor performance evaluation, failure to receive a raise, placement on a performance improvement plan, and termination, were pretextual"); *Knights v. Hewlett Packard*, 230 Cal.App.3d 775, 780 (1991) (noting that instances of poor performance are justifiable reasons for termination); *King v. UPS, Inc.*, 152 Cal.App.4th 426, 433 (2007) (legitimate, non-discriminatory reason for termination existed based on employee's falsification of timecards).

Plaintiff bears the burden of proving that SCPMG's stated reason is pretextual, which she cannot do. *Guz*, 24 Cal.4th at 361 ("[T]here must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the employer's actions.") (emphasis in original).

Cozen O'Connor
101 Montgomery St, Suite 1400
San Francisco, CA 94104

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
**Case No: 2:21-cv-00940-PA-AGR**

COZEN O'CONNOR
101 MONTGOMERY ST, SUITE 1400
SAN FRANCISCO, CA 94104

Plaintiff must offer *specific* and *significantly probative* evidence that the articulated reason is "untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two." *Hersant v. Dep't of Social Servs.*, 57 Cal.App.4th 997, 1004-05 (1997).   Plaintiff must do far more than show that SCPMG's "decision was wrong, mistaken, or unwise." *Horn v. Cushman & Wakefield W., Inc.*, 72 Cal.App.4th 798, 807 (1999).   She must demonstrate that SCPMG's reason is "unworthy of credence." *See Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1062 (9th Cir. 2002); *Hersant*, 57 Cal.App.4th at 1005.   She must show that SCPMG voiced a facially valid but ultimately phony reason, where the real reason was discrimination. *See Walker v. Blue Cross of Cal.*, 4 Cal.App.4th 985, 996 (1992) (former employee's suspicion of "improper motives" was "based on conjecture and speculation" and was insufficient to establish discriminatory bias).

Here, Plaintiff cannot meet her burden for at least three reasons.   First, as discussed above, Plaintiff admits that she had multiple performance issues during her probationary period.   While Plaintiff may want to characterize the performance counseling and reviews that she received as "criticisms" and "reprimands," absent some actual evidence of discrimination from management, she cannot substitute her judgment as to the significance of her errors for that of management to establish pretext. *See Moore v. May Dept. Stores Co.*, 222 Cal. App. 3d 836, 840 (1990) (where "there [is] no hint that the asserted reason for [an employee's] termination was capricious or unrelated to business needs or goals, or pretextual", a jury should not "be allowed to decide the correctness of [the employer]'s business judgment in terminating" the employee).   Plaintiff admits that essential functions of her job are "timely and appropriate assessment, diagnosis, treatment planning and treatment intervention of members" and "appropriate and timely documentation of clinical encounters in member's charts."   Plaintiff also understands that "timely and

appropriate" means completing the treatment note by the end of the day on the same day as the patient appointment. (Warren Tr., Vasquez Decl., Ex. A, 74:18-77:4, 77:15-78:7, Ex. 7.)  Plaintiff cannot dispute that her managers viewed her failure to timely complete patient charts and close out of psych notes as a time management issue serious enough to warrant termination.  Plaintiff also knew that her managers expected her to complete patient charts in a timely manner without any delays.  This alone shows that there was no pretext in Plaintiff's termination.

Second, any attempt by Plaintiff to argue that her performance was not actually subpar is without merit.  Plaintiff's subjective belief about her performance, especially in light of the overwhelming evidence to the contrary,[10] does nothing to advance her position. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) ("[A]n employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact."); *Schuler v. Chronicle Broadcasting Co., Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986) (plaintiff's subjective assessment that she "felt" competent and was "confident" or her job skills was not enough to raise a genuine issue of material fact as to pretext).

Third, Plaintiff's basis for believing SCPMG was motivated because of her race, age or disability is based on nothing more than conclusory speculation and based on the way she believes she was treated.  Plaintiff *believes* that she was discriminated against because: (1) she had to physically go into work after the start of the pandemic while others were allowed to work remotely, (2) when she asked to park in the handicapped spaces in the front of the building, she was told to park in the handicapped spaces toward the back of the building, and (3) when she came back

---

[10] This is evidenced by internal communications regarding Plaintiff's performance issues and the two performance evaluations conducted for Plaintiff.  (*See supra* § II.C.-F.)

COZEN O'CONNOR
101 MONTGOMERY ST, SUITE 1400
SAN FRANCISCO, CA 94104

**22**
**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 2:21-cv-00940-PA-AGR**

from medical leave in July 2020, she was disciplined for not closing her psych notes before she went on her leave of absence. (Complaint ¶¶ 13-15, Warren Tr., Vasquez Decl., Ex. A, 35:3-39:12, 66:7-67:17, 105:4-24.)   There is no merit to any of Plaintiff's claims.  Plaintiff was not the only employee who worked onsite after the start of the pandemic – Gonzales and Martinez went into the office as managers were required to be onsite, and there were other staff members who were also physically present in the workplace. (Warren Tr., Vasquez Decl., Ex. A, 65:14-19; Gonzales Decl. ¶ 6; Martinez Decl. ¶ 2.)  Plaintiff also cannot dispute that she was required to be at work in person was so that she could attend orientation and be properly trained in person. (Warren Tr., Vasquez Decl., Ex. A, 67:18-23; Levy Decl. ¶ 3.) Furthermore, Plaintiff admits she never asked or emailed her managers or anyone else about the possibility of working remotely. (Warren Tr., Vasquez Decl., Ex. A, 66:7-67:17, 69:13-15; Levy Decl. ¶ 3; Gonzales Decl. ¶ 6.)  With respect to Plaintiff's request to park in the handicapped spots in front of the building, Plaintiff admits she was told that spots in the front were reserved for patients. (Warren Tr., Vasquez Decl., Ex. A, 35:3-14.)  Levy never told Plaintiff she could not use the handicapped spaces in the front or elsewhere. (Levy Decl. 3.)  With respect to Plaintiff's claim that she was "disciplined" for not closing her psych notes, Plaintiff admits that the only "discipline" she received for leaving her notes open was being told by Levy "why didn't you close these notes" and "you are not doing your job." (Warren Tr., Vasquez Decl., Ex. A, 109:19-23.)  Plaintiff also admits that the only time Levy reprimanded her was for leaving her notes open. [11] (Warren Tr., Vasquez Decl., Ex. A, 139:4-11.)

---

[11] Though not material, Plaintiff may attempt to create a disputed fact by arguing that the reason why she did not close out of her psych notes was because Gonzales told her not to close them.  Even if Gonzales did tell Plaintiff to not close her notes, this was not the sole reason for why Plaintiff was terminated.  Plaintiff has admitted that she had difficulty learning the Health Connect system, that she missed an orientation

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 2:21-cv-00940-PA-AGR**

COZEN O'CONNOR
101 MONTGOMERY ST, SUITE 1400
SAN FRANCISCO, CA 94104

Plaintiff received no other disciplinary or adverse employment action.[12]

Plaintiff also claims that she *believes* the low ratings in her performance evaluations are due to her race, age and disability and that the evaluations are

_____

meeting, and that she was late to a patient appointment. (Warren Tr., Vasquez Decl., Ex. A, 95:9-21, 104:2-105:3, 112:10-113:7.)  All of these performance issues were taken into consideration when SCPMG made the decision to terminate Plaintiff.

[12] Plaintiff now claims in her deposition that she was also harassed and discriminated against because of other comments made by her managers and coworkers, which were not raised in the Complaint, including:  (1) Levy allegedly made the comment to her "never in five years has he had to follow up like this with an employee"; (2) Levy allegedly said "I can't believe she's calling at this time of night" when Plaintiff would call him on his cell phone late at night about work-related questions; (3) Hermus sent Gonzales an email in which he allegedly said Plaintiff "did not have the ability to learn"; (4) Hermus allegedly made the comments to Plaintiff, "Old people like us have to really . . . work harder.  You are the only person I've had to train twice, but we are old" and "Give a sister a break. Give a brother a break," in which he said "sista" instead of "sister" and "brutha" instead of "brother"; (5) Levy allegedly said he did not know about Plaintiff's hip conditions when Plaintiff requested for an office on the first floor; (6) Levy allegedly said that he never heard of the mandatory time off policy for COVID-19; (7) Gonzales allegedly asked Plaintiff why she was coughing one day and how her asthma affected her; (8) Levy allegedly admonished Plaintiff for making an office clerk wait for a scheduled appointment; (9) Levy allegedly said that no one else had asked him the same questions as Plaintiff did in five years and stated that Plaintiff did not know when issues were important and when they were not; and (10) with respect to Plaintiff's timesheets, Levy allegedly said, "Still wrong. You are the only one who hasn't turned in your time sheet." (Warren Tr., Vasquez Decl., Ex. A, 11:18-13:20, 39:13-40:8, 40:19-41:7, 92:1-93:7, 41:8-42:22, 42:23-43:20, 44:5-46:8, 46:22-47:13, 47:23-49:3.) These actions are too trivial to create any material adverse effect on the terms, conditions, or privileges of Plaintiff's employment. *See Yanowitz*, 36 Cal.4th at1054-55 ("[m]inor or relatively trivial adverse actions or conduct by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable.")

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF Case No: 2:21-cv-00940-PA-AGR**

COZEN O'CONNOR
101 MONTGOMERY ST., SUITE 1400
SAN FRANCISCO, CA 94104

"degrading" and based on stereotypes. (Complaint ¶¶ 16-17; Warren Tr., Vasquez Decl., Ex. A, 160:3-163:14, 165:2-166:2.)  Again, this claim is meritless as Plaintiff could not point to any specific language in her performance evaluations that are discriminatory based on her race, age or disability. (Warren Tr., Vasquez Decl., Ex. A, 160:3-163:14.)  Furthermore, this *belief* is not the type of specific evidence necessary to defeat summary judgment because it is nothing more than speculation and conjecture, which does not establish pretext. *See King*, 152 Cal.App.4th at 433 ("Plaintiff's subjective beliefs in an employment discrimination case do not create a genuine issue of fact"); *Horn*, 72 Cal.App.4th at 807 (an issue of fact cannot be created by speculation or conjecture).  Summary judgment is appropriate.[13]

## B.    Plaintiff's Third Claim For Failure To Prevent Discrimination Fails As A Matter Of Law.

Because Plaintiff's Civil Rights Act of 1981 and FEHA claims fail, her claim for failure to prevent discrimination under FEHA also fails.  First, plaintiff cannot establish any underlying unlawful conduct, which is a prerequisite to such a claim. *See supra* § III.A; *Trujillo v. N. County Transit Dist.*, 63 Cal. App. 4th 280, 288-89 (1998) (an employer cannot be liable for failing to prevent harassment when no such conduct actually occurred); *Thompson v. City of Monrovia,* 186 Cal. App. 4th 860, 880 (2010).  Second, even if Plaintiff's claim was viable, which it is not, there is no question that SCPMG took all reasonable steps to comply with its obligation to prevent and correct discrimination, harassment and retaliation in the workplace by drafting and distributing anti-harassment, retaliation, and discrimination policies in the workplace. *See* Gov't Code, § 12940 (j)(1); *Barrett v. Applied Radian Energy*

---

[13] Plaintiff's FEHA claims for discrimination and retaliation are not asserted against the individual defendants.  Plaintiff only asserts her claim under Section 1981 against Levy and Gonzales and it fails against them for the same reasons as it does as to SCPMG.

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
**Case No: 2:21-cv-00940-PA-AGR**

COZEN O'CONNOR
101 MONTGOMERY ST., SUITE 1400
SAN FRANCISCO, CA 94104

*Corp.*, 240 F.3d 262, 266 (4th Cir. 2001) (distribution of an anti-harassment policy is compelling proof that an employer has exercised reasonable care to prevent and correct sexual harassment]; *see also Nasser v. AT&T Corp.*, 2007 WL 1119203 at *11 (N.D. Cal. April 16, 2007). Plaintiff cannot establish her claim.

**C.    Plaintiff's Fourth And Eighth Claims For Retaliation Fail As A Matter Of Law.**

Plaintiff alleges that SCPMG's refusal to accommodate her, verbal reprimands and termination of her employment were acts of retaliation in violation of FEHA and Rehabilitation Act of 1973. Once again, the elements of a *prima facie* case under federal and California law are the same. In order to establish a retaliation claim, Plaintiff must prove that (1) she engaged in a "protected activity"; (2) the employer subjected the employee to an adverse employment action; and (3) a causal link existed between the protected activity and the employer's action. *See Pardi v. Kaiser Foundation Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004); *Yanowitz*, 36 Cal. 4th at 1042.

Here, Plaintiff cannot meet this initial burden as she simply has no evidence that she engaged in any protected activity. She admits that even though she believed that she was harassed and discriminated against on the basis of her race, age, and disability, **she never complained to her managers or anyone at SCPMG about how she was treated during her employment and never reported any alleged harassment or discrimination to anyone.** (Warren Tr., Vasquez Decl., Ex. A, 56:21-57:7, 94:19-95:8.) She failed to report any complaints despite her knowledge as to SCPMG's policies prohibiting harassment and discrimination based on disabilities, gender, race or age, which also provided that employees should report any such concerns. (Warren Tr., Vasquez Decl., Ex. A, 32:25-33:24, 34:3-12, 53:15-54:14, Exs. 3, 5.) Plaintiff also never raised any concerns with her union representative. (Warren Tr., Vasquez Decl., Ex. A, 55:7-56:17.) The only protected

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
**Case No: 2:21-cv-00940-PA-AGR**

COZEN O'CONNOR
101 MONTGOMERY ST., SUITE 1400
SAN FRANCISCO, CA 94104

activity Plaintiff engaged in was filing an administrative complaint with the DFEH several months *after* her termination.  Needless to say, an employer cannot be found to have retaliated against an employee if the allegedly adverse action occurs before the employee complains. *See Yanowitz*, 36 Cal.4[th] at 1046-47 (no retaliation occurs if there is no evidence that the employer knew, at the time of the adverse employment action, that the employee had engaged in protected activity).[14]

Assuming *arguendo* that Plaintiff could establish a *prima facie* case of retaliation (which she cannot), her claims still fail because SCPMG's termination of Plaintiff's employment was based on legitimate, non-retaliatory reasons and Plaintiff has no evidence of pretext. *See supra* § III.A.2.

**D.    Plaintiff's Fifth Claim For Harassment Fails As A Matter Of Law.**

Plaintiff alleges a harassment claim against SCPMG and the individual Defendants Levy and Gonzales.  To establish a *prima facie* case of harassment under FEHA, Plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) Defendants are liable for the harassment. *Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 876  (2010).  She also "must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a

---

[14] Any attempt by Plaintiff to argue that she engaged in protected activity under FEHA by either requesting a medical leave or taking a medical leave or notifying her managers about her alleged medical conditions is also without merit as such activity is not "protected activity" under FEHA. *See Moore v. Regents of University of California*, 248 Cal.App.4th 216, 247 (2016) ("Notifying one's employer of one's medical status, even if such medical status constitutes a "disability" under FEHA, does not fall within the protected activity identified in subdivision (h) of section 12940").

COZEN O'CONNOR
101 MONTGOMERY ST, SUITE 1400
SAN FRANCISCO, CA 94104

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 2:21-cv-00940-PA-AGR**

hostile work environment that qualifies as hostile or abusive to employees because of their [protected status]." *Miller v. Dept. of Corrections,* 36 Cal. 4th 446, 462  (2005).  And, "The harassment must satisfy an objective and subjective standard." *Hope v. Cal. Youth Authority*,  134 Cal. App. 4th 577, 588 (2005).  Put another way, "'the plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee and that [she] was actually offended.'" *Id.*

Plaintiff alleges that she was harassed on the basis of her race, age, disability and alleged protected activity because she was given verbal reprimands, bad performance evaluations and was terminated from her employment. (Complaint ¶¶ 34-35.)  However, the conduct that Plaintiff alleges in her Complaint does not constitute actionable harassment.  Reprimanding Plaintiff regarding her performance issues and reflecting these issues in her performance evaluations are nothing more than exercises of managerial discretion and do not, as a matter of law, constitute harassment. *See Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 64-65 (1996) ("common[] necessary personnel management actions such as hiring and firing, job or project assignment, office or work station assignments, promotion or demotion, performance evaluations…do not come within the meaning of harassment").

In addition to her allegations in the Complaint, Plaintiff now alleges that she was also harassed by other comments allegedly made by her managers and coworkers. *See supra* § III.A.2. Fn. 3.  Plaintiff's claim fails for several reasons.  First, the alleged conduct and comments are not objectively harassing because they would not interfere with a reasonable employee's work performance and would not seriously affect the psychological well-being of a reasonable employee.  Plaintiff's managers and coworkers were simply expressing their concerns regarding the fact that Plaintiff was

COZEN O'CONNOR
101 MONTGOMERY ST, SUITE 1400
SAN FRANCISCO, CA 94104

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
**Case No: 2:21-cv-00940-PA-AGR**

not fully grasping the Health Connect system and that Plaintiff had difficulties with workflow, time management, and other work-related issues. Furthermore, with respect to the comments that Plaintiff alleges Hermus made during her training sessions – that Plaintiff "did not have the ability to learn," comments about his age or her age, and that Plaintiff was the only person he had to train twice – Hermus did not make such comments. (Hermus Decl. ¶¶ 4, 6.) Even if Hermus did make a comment about "sisters and brothers," Hermus has a New York accent and made the comments in the context that they were all part of the Kaiser family and that everyone took care of each other like "sisters and brothers." (Hermus Decl. ¶ 6.) This is not objectively offensive.

Second, Plaintiff admits that she never heard her managers make any inappropriate comments about her race, age or disability, aside from asking Plaintiff about her cough and asthma (which is reasonable given the outbreak of the COVID-19 pandemic). (Warren Tr., Vasquez Decl., Ex. A, 11:18-13:20, 50:20-22, 50:23-51:4, 51:9-18, 73:11-15.) Nor could Plaintiff point to any specific language in her performance evaluations that are discriminatory based on her race, age or disability. (Warren Tr., Vasquez Decl., Ex. A, 160:3-163:14.) Thus, the conduct and comments as alleged by Plaintiff are not "harassing" as they have no relation to her race, age or disability. *See Hardin v. S.C. Johnson & Sons, Inc.*, 167 F.3d 340, 345-46 (7th Cir. 1999) (persistent use of foul and abusive language directed to the plaintiff was merely juvenile, rather than indicative of gender or racial animus); *Houston v. Regents of the Univ. of Cal.,* 2006 WL 1141238 at *26 (N.D. Cal. May 1, 2006) (concluding that plaintiff did not have a claim for harassment where plaintiff was yelled at and subjected to supervision by supervisors; anti-discrimination laws are not general civility codes for the workplace); *Guthrey v. State of Cal.*, 63 Cal.App.4th 1108, 1124

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF Case No: 2:21-cv-00940-PA-AGR**

COZEN O'CONNOR
101 MONTGOMERY ST, SUITE 1400
SAN FRANCISCO, CA 94104

(1998) (petty annoyances and trivialities, which are not objectively based on some protected characteristic, will not support a claim of harassment).

Third, the alleged conduct and comments were not sufficiently severe or pervasive to create a hostile work environment. As discussed above, the alleged comments are not objectively offensive and, thus, are not severe. Nor were they sufficiently pervasive to alter Plaintiff's working environment. In fact, Plaintiff never complained to her managers or anyone at SCPMG that she found the alleged conduct and comments to be harassing and never reported any alleged harassment or discrimination to anyone. (Warren Tr., Vasquez Decl., Ex. A, 56:21-57:7, 94:19-95:8.) Accordingly, the conduct and comments from Plaintiff's managers and coworkers (to the extent they even made them) were not sufficiently severe or pervasive to constitute harassment. *See Jones v. Dept. of Corrections & Rehabilitation*, 152 Cal. App. 4th 1367, 1377 (2007) ("The requirement that the conduct be sufficiently severe or pervasive to create a working environment a reasonable person would find hostile or abusive is a crucial limitation that prevents…harassment law from being expanded into a 'general civility code'").

Thus, because Plaintiff cannot show that she was subjected to severe or pervasive, objectively harassing conduct, her claim for harassment against all Defendants fails as a matter of law.

**E.    Plaintiff's Ninth Claim For Intentional Infliction Of Emotional Distress ("IIED") Fails As A Matter of Law**

Claims for emotional distress caused by the employer's conduct involving termination, demotions, criticism of work practices, etc., are deemed "part of the normal risk of employment" and subject to the exclusive remedy provisions of the workers' compensation law. *See Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 160 (1987). Thus, Plaintiff's claim for IIED is preempted by the exclusive

COZEN O'CONNOR
101 MONTGOMERY ST., SUITE 1400
SAN FRANCISCO, CA 94104

COZEN O'CONNOR
101 MONTGOMERY ST., SUITE 1400
SAN FRANCISCO, CA 94104

1  remedy provisions of California's workers' compensation laws and fails.  *See*

2  *Shoemaker v. Myers*, 52 Cal.3d 1, 25 (1990) (even if conduct may be characterized as

3  intentional, unfair or outrageous, it is covered by workers' compensation exclusivity).

4    Even if Plaintiff's IIED claim was not preempted, it is fatally flawed.  Plaintiff

5  has no evidence of "extreme and outrageous" conduct, which is conduct that "exceeds

6  all bounds of that usually tolerated in a civilized community." *Hughes v. Pair*, 46

7  Cal.4th 1035, 1049-51 (2009) (even threatening comments "fall far short" of

8  outrageous).  Plaintiff was terminated during her 90-day probationary period for

9  exhibiting numerous, admitted, performance issues.  Nothing suggests that Plaintiff

10  was subjected to extreme and outrageous conduct.  As such, her claim for IIED fails.

11  **F.    Plaintiff's Tenth Claim For Wrongful Termination Fails.**

12    Plaintiff's wrongful termination claim relies on alleged statutory violations of

13  FEHA, the Civil Rights Act of 1981 and the Rehabilitation Act of 1973. (Complaint

14  ¶¶ 53-55.)   Because she cannot establish an underlying statutory violation, she

15  likewise cannot establish a claim for wrongful termination.  *See Hanson v. Lucky*

16  *Stores, Inc*., 74 Cal. App. 4th 215, 229 (1999).

17  **G.    SCPMG Is Entitled To Summary Adjudication Of Plaintiff's Claim For**
18  **Punitive Damages.**

19    In order to establish a claim for punitive damages, Plaintiff must prove by clear

20  and convincing evidence, that an officer, director or managing agent of SCPMG acted

21  with malice, oppression or fraud, or knowingly ratified such malicious, oppressive, or

22  fraudulent conduct. Cal. Civ. Code § 3294; *White v. Ultramar, Inc*., 21 Cal.4th 563,

23  566-67 (1999).  Here Plaintiff has no evidence that Levy and Gonzales – the two

24  decision makers – are officers, directors or managing agents, which is hardly

25  surprising, as they are not.  Neither Levy nor Gonzales have ever been an officer or

26  director of SCPMG; nor have they had any discretionary authority over decisions that

27

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No: 2:21-cv-00940-PA-AGR**

ultimately determined SCPMG's policies. In addition, neither Levy nor Gonzales were consulted about, or provided any input into, the polices set at the corporate level for SCPMG or any other Kaiser entity. (Levy Decl. ¶ 12; Gonzalez ¶ 14.)

Assuming *arguendo* that the decision makers in the case – Levy and Gonzales – are considered managing agents, directors, or officers of SCPMG, there is still no evidence, let alone clear and convincing evidence, of malice, oppression, or fraud. Cal. Civ. Proc. Code § 3294. "Punitive damages are proper only when the tortious conduct rises to levels of extreme indifference to the Plaintiff's rights . . . ." *American Airlines, Inc. v. Sheppard, Mullin, Richer & Hampton*, 96 Cal.App.4th 1017, 1051 (2002). Nor is it sufficient for Plaintiff to show mere violation of the law. *See Scott v. Phoenix Schools, Inc.*, 175 Cal.App.4th 702, 717 (2009).

Here, the crux of Plaintiff's argument in support of malice or oppression is that Levy and Gonzales discriminated against and harassed her due to her race, age and disability. As discussed above, however, there is no evidence to support that Levy, Gonzales, or anyone else, discriminated against or harassed or took any action against Plaintiff because of her race, age or disability. There is also no evidence that the basis for Plaintiff's termination – her poor performance – was pretextual. Rather, the undisputed evidence demonstrates that Plaintiff had numerous deficiencies with her performance, and as a result, her employment was terminated. Thus, Plaintiff's claim for punitive damages must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendant requests that the Court grant their motion for summary judgment.

Dated:  February 28, 2022                    COZEN O'CONNOR

By: /s/ Bethany A. Vasquez _____
    Bethany A. Vasquez
    Attorneys for Defendants

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
**Case No: 2:21-cv-00940-PA-AGR**

COZEN O'CONNOR
101 MONTGOMERY ST, SUITE 1400
SAN FRANCISCO, CA 94104